OPINION OF THE COURT
Martha Gibbell, J.
In an appeal from a Supreme Court judgment denying writs of habeas corpus involving petitions of three individuals in unrelated acts of delinquency, all three respondents having been found (1) mentally incompetent to stand trial and (2) dangerous to themselves and to the community and all of whom had been committed under CPL article 730 by four *17 Judges of the Family Court, the Appellate Division reversed and remanded the matter to the Family Court for further proceedings, directing that the juveniles remain in the custody of the Kings County Hospital pending the outcome of the hearing. (People ex rel. Thorpe v Clark, 62 AD2d 216.)
In the within matter, which pertains to one of the respondents three juvenile delinquency petitions had been filed against Jack T. for three separate incidents. Two of these occurred on or about October 6, 1976 and the third occurred on or about May 27, 1977; the first two petitions were filed in Family Court on October 12, 1976. These petitions charged the respondent with reckless endangerment, menacing and unlawful possession of a weapon. The respondent was alleged to have fired a handgun in a Brooklyn subway station and to have pointed a loaded revolver at a dentist in his Brooklyn office.
A request for a competency examination under CPL 730.30 was made by the Law Guardian. The respondent was examined by a psychiatrist who concluded that he lacked the mental capacity to stand trial due to mild mental retardation, epilepsy, hyperactive syndrome and specific language disability. The Family Court found the respondent incompetent to stand trial on the two petitions pursuant to CPL 730.10 (subd 1). (See decision of Judge Leon Deutsch, Sept. 9, 1977.)
The third petition had been filed against the respondent on June 8, 1977 charging the respondent with criminal trespass, criminal possession of a weapon, menacing and attempted assault. The respondent was alleged to have attempted to injure another individual with a hatchet. The report of the psychiatric examinations made at Kings County Hospital was again introduced into evidence and the respondent was found incompetent to stand trial on the third petition as well. (See decision of Judge Rudolph F. Di Blasi, Aug. 29, 1977.)
Both Judges Deutsch and Di Blasi having found the respondent incompetent, remanded him to the Commissioner of Mental Hygiene, pursuant to CPL 730.50.
Subsequently, the respondent commenced a habeas corpus proceeding in Supreme Court which was dismissed on the grounds that the Family Court Act authorized committment. The respondent appealed from the dismissal of the habeas corpus proceedings.
The Appellate Division (62 AD2d 216, supra) addressed the issue of whether the Family Court had jurisdiction to commit *18 a mentally retarded juvenile to the Department of Mental Hygiene for involuntary care under CPL article 730 where the respondent is found to be incompetent to defend himself. It was the decision of the said court that the Family Court could not commit the respondent pursuant to said article, despite the fact that the Family Court Act was without power similar to that covered by CPL article 730 and despite the further fact that the record supported the finding of the Family Court Judges that the juvenile was a severe threat not only to himself but to the community as well. The Appellate Division (62 AD2d 216, 227, supra) found that "reliance upon CPL 730.50 is inapposite. The Criminal Procedure Law was not designed to provide for the care and treatment of children.” It decried the failure of the Legislature to provide such powers specifically in the Family Court Act and went on to show that under these circumstances the Family Court was not without adequate resources in that it could take jurisdiction over a mentally retarded juvenile pursuant to section 231 of the Family Court Act.
Section 231 of the Family Court Act in turn requires that the procedures set out in the Mental Hygiene Law be followed before a mentally retarded child may be involuntarily committed. The court (62 AD2d 216, 229, supra) emphasized that no committment of a mentally retarded juvenile may be made by the Family Court without strict compliance with the provisions of the Mental Hygiene Law, so as to protect the individual’s constitutional rights of due process and granted the writ "to the extent of directing that the proceeding be remanded to the Family Court with directions that the Family Court follow the procedures of section 33.27 [now § 15.27] of the Mental Hygiene Law and consider the application required therein to have been made at the time of the request for an examination pursuant to CPL article 730.”
Subdivision (a) of section 15.27 of the Mental Hygiene Law authorizes the involuntary admission of a person alleged to be mentally retarded, "upon the certificates of two examining physicians or of one examining physician and one certified psychologist, accompanied by an application for the admission of such person.”
The Appellate Division held (62 AD2d 216, 227, supra) that "[t]he court can then consider the guardian’s request to be an application sufficient to satisfy subdivisions (b) and (c) of *19 section 33.27 of the Mental Hygiene Law in the event that the youth is found to be incompetent to proceed.”
In furtherance of the Appellate Division decision, a hearing to review the psychiatric examination pursuant to CPL article 730 and section 15.27 of the Mental Hygiene Law was held to reach a determination disposition concerning respondent Jack T. consistent with his constitutional rights.
This court received the reports of Dr. Luis V. Zeiguer, M.D., and Dr. John Welch, M.D., signed June 6, 1978 and June 7, 1978, respectively, as to the competency of the respondent and heard their testimony.
The physicians diagnosed the respondent as suffering from mental retardation, hyperkinetic reaction, psychosis associated with organic brain syndrome (in remission) and epilepsy. The reports and testimony concluded that the respondent lacks the capacity to understand the proceedings against him and assist in his own defense.
With regard to the evaluation of the respondent for certification, pursuant to section 15.27 of the Mental Hygiene Law, written statements were received by the court from Dr. Zeiguer and Dr. David Stead, M.D., and testimony on the issue was given by Dr. Zeiguer and Dr. Welch. All of the doctors found that the respondent was not in need of involuntary care and treatment and none certified respondent as requiring such treatment. Dr. Zeiguer’s statement, June 6, 1978, states, "[B]e-cause an alternative better treatment is available, there is no reason to declare Jack T. a 'person in need of care and treatment,’ meaning residential treatment. The basic prerequisite for applicability of Article 15 is not filled by the present situation.”
Dr. Stead’s statement, dated September 27, 1978, states, "On the basis of my psychiatric evaluation of Jack T., I have determined that this young man should not be certified as mentally retarded under Mental Hygiene Law 15.27, (formerly 33.27), and in my opinion he should be sent home. His family and school are in agreement with this opinion. Furthermore, I do not regard him, at the present time, to be a danger to himself and others.”
At this juncture, what happens is crystally clear. If after having followed the procedure outlined by the Appellate Division the Family Court finds that the respondent’s incompetency and dangerousness are continuing conditions and thereafter certification as outlined above is denied, the Family *20 Court is confronted with the same question of a dispositional alternative faced by Judges Deutsch and Di Blasi, with one important difference, namely that this court, under the strict construction of the Appellate Division, is restricted from relying on CPL 730.50. The Family Court, therefore, has no real alternative.
The fact that there was a "legislative oversight” on the question of endowing the Family Court with power to protect the incompetent from himself or the public from him under such circumstances is no answer for the Family Court which was and may daily be faced with the problem.
In answer to the Appellate Division’s analysis (62 AD2d 216, 229, supra) that "[i]n the meantime, the procedures here outlined adequately provide for the protection of the juveniles’ rights while upholding the jurisdiction of the Family Court to adequately deal with these circumstances”, this court respectively submits that sections 231 and 255 of the Family Court Act and section 15.27 of the Mental Hygiene Law are not supportive where there is no certiñcation and no adjudication.
As the law now stands, the Family Court’s hands are tied. Resort to the CPL insofar as remand to involuntary care of an incompetent mentally retarded juvenile on a delinquency petition is foreclosed, regardless of the degree of danger to self or the community which this court finds in respondent. And, if certification and application are not available in accordance with section 15.27 of the Mental Hygiene Law this court comes to a standstill before another closed door.
The Family Court has been rendered inept under these circumstances. Glaring inconsistancies flow freely on the surface and this court offers the following short analysis to highlight the urgency with which the Legislature must act. Legislation vis-á-vis an amendment to the Family Court Act which will specifically deal with the problem of the retarded juvenile incompetent and remand for involuntary care and treatment similar in nature and intent as CPL article 730 is mandatory.
1. CPL article 730 may now be used by the Law Guardian to request an incompetency examination but the Family Court may not use the same article to remand the juvenile it finds incompetent and even dangerous.
2. Still another frustration faced by the court is the fact that its function is ministerial under section 15.27 of the Mental Hygiene Law. The mentally retarded juvenile is certi *21 fied or not certified by the doctors enumerated in the statute. This court is then bound by the certification or lack of it and without it has no power to commit the individual to the Department of Mental Hygiene for involuntary admission.
The doctor(s) not only recommend facilities which are dispositional in nature but more significantly after being unchallenged arbiters in the certification procedure are in a position to experiment while they test out the experience of the retarded incompetent juvenile in the general community, always reserving the right to recommend residential placement if it does not work out.
3. In connection with the persons enumerated in section 15.27 of the Mental Hygiene Law who are eligible to make the application for admission to involuntary care, although about 14 persons and/or directors of institutions are listed there is no mention of a Law Guardian or attorney. To fill this need, the Appellate Division recommended that since the Law Guardian requested the incompetency examination, the request would make the Law Guardian suitable to make the application.
4. The question of "suitable person” to make the "application” poses a further problem as to proper procedure in the event the Law Guardian fails or refused to make the request for the competency examination pursuant to CPL article 730 and
5. Finally, what if the Family Court on its own motion, or the Corporation Counsel had requested or were to apply for such examination, would the court or Corporation Counsel also be considered proper parties under CPL article 730 and also proper applicants under section 15.27 of the Mental Hygiene Law?
It is hoped and strongly urged that the Legislature recognize the need, rectify the failure and provide the remedy without further delay. It is inconceivable that the Legislature will suffer with sanguinity a situation so serious as to stifle a court’s power to stop a mentally retarded adjudicated incompetent juvenile found to be dangerous from staying out free at large in the community because technical certification and/or application are not available for involuntary care.
Fortunately, based on the reports and testimony of the psychiatrists and social workers, at this time this court finds said mentally retarded juvenile is no longer a danger to himself or the community although said respondent is still *22 found to be incompetent to stand trial and not likely to be competent in the foreseeable future.
[Portions of opinion omitted for purposes of publication.]